WR-85,011-01,02,03,04
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/2/2016 11:01:05 AM
Accepted 6/2/2016 11:21:01 AM
ABEL ACOSTA
CLERK

**WR-85,011-01, WR-85,011-02, WR-85,011-03, WR-85,011-04**

| | | |
|---|---|---|
| EX PARTE | § | IN THE TEXAS |
| | § | |
| | § | COURT OF |
| | § | |
| EDUARDO ENRIQUE ALFARO | § | CRIMINAL APPEALS |

RECEIVED
COURT OF CRIMINAL APPEALS
6/2/2016
ABEL ACOSTA, CLERK

## MOTION TO STAY PROCEEDINGS PENDING THE FILING OF EVIDENCE IN THE TRIAL COURT

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW** EDUARDO ENRIQUE ALFARO, Applicant, and respectfully asks this Court to stay the proceedings in this case.

Alfaro's applications for writ of habeas corpus were filed on October 7, 2015, in the 401st Judicial District Court. Upon the State's filing of a reply on March 24, 2016, Alfaro asked the court for time to file a response before the court made its findings. A response was crucial—in the State's reply, the State argued Alfaro had not shown his attorneys were ineffective in failing to consult with a forensic psychologist as to mitigation evidence to present at punishment because Alfaro did not "provide[ ] any evidence of what such testimony would have been." (Resp. at 13). But Alfaro's failure to provide evidence of what a forensic psychologist would have testified was not knowing—it was a clerical

1

oversight. Alfaro simply forgot to attach his examining forensic psychologist's report. Accordingly, Alfaro sought to respond to the State's reply with the report attached hereto.

The state was aware of this and, in fact, agreed to Alfaro's request to supplement the record with the report. Additionally, counsel spoke to the Judge of the 401st Judicial District Court, Mark Rusch, and he agreed to the request. For some indeterminable reason, however, without any order or notice to either Alfaro or the State, the case was then transferred to the 199th Judicial District Court. On April 26, 2016, that court without prior notice to counsel then entered findings and conclusions recommending Alfaro's application be denied and forwarded the case to this Court on May 2, 2016.

Those Findings and Conclusions were prematurely entered. Alfaro has additional evidence to be submitted and requests a stay to provide said evidence to the trial court. Accordingly, Alfaro respectfully asks that this motion be granted.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
214-468-8100
214-468-8104 (fax)

*Attorney for Applicant*

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Motion to Stay Proceedings Pending the Filing of Evidence in the Trial Court was served to the Collin County District Attorney's Office and the 401st Judicial District Court on June 2, 2016.

      /s/ Bruce Anton
BRUCE ANTON

## WRIT NOs. 401-82025-HC1, 401-82026-HC1, 401-82025-HC2 & 401-82026-HC2
## TRIAL COURT NOs. 401-82025-2011 & 401-82026-2011

| | | |
|---|---|---|
| EX PARTE | § | IN THE 401ST JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| EDUARDO ENRIQUE ALFARO | § | COLLIN COUNTY, TEXAS |

### AFFIDAVIT

Please supplement the attached affidavit and forensic psychological evaluation of Dr. Timothy Proctor, as an attachment to the Reply to State's Response to Alfaro's Applications for Writ of Habeas Corpus, previously filed on April 25, 2016.

Respectfully submitted,

BRUCE E. ANTON
Bar Card Number 01274700
SORRELS UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
(214) 468-8100
(214) 468-8104 fax

Attorney for Alfaro

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filing has been delivered to the Collin County District Attorney's Office on the 13th day of May, 2016.

BRUCE E. ANTON

**WRIT NOs. 401-82025-HC1, 401-82026-HC1, 401-82025-HC2 & 401-82026-HC2**
**TRIAL COURT NOs. 401-82025-2011 & 401-82026-2011**

| | | |
|---|---|---|
| EX PARTE | § | IN THE 401ST JUDICIAL |
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| EDUARDO ENRIQUE ALFARO | § | COLLIN COUNTY, TEXAS |

## AFFIDAVIT

COMES NOW, Dr. Timothy Proctor and hereby gives the following statement under oath:

My name is Dr. Timothy Proctor. I am a Board Certified Forensic Psychologist in the state of Texas. My address is 11882 Greenville Avenue, Suite 107, Dallas, Texas 75243. My phone number is 972-644-8688 and my email is proc75205@yahoo.com.

Attached hereto is my report detailing my findings concerning Alfaro's convictions of continuous sexual assault of a young child, aggravated sexual assault of a child, sexual assault of a child and indecency with a child – contact. The facts stated in the report are true and correct. If I had been requested to testify at trial, I would have appeared and testified as set out in my report.

FURTHER AFFIANT SAYETH NOT.

DR. TIMOTHY PROCTOR

SUBSCRIBED AND SWORN TO BEFORE ME on this 9th day of May, 2016.

Ashley McKenzie
My Commission Expires
11/12/2016

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

My commission expires: 11/12/2016

AFFIDAVIT – Solo Page

## PRICE, PROCTOR & ASSOCIATES, LLP

*A LIMITED LIABILITY PARTNERSHIP OF BOARD CERTIFIED FORENSIC PSYCHOLOGISTS*

11882 Greenville Ave., Suite 107; Dallas, Texas 75243
Telephone: 972-644-8686•Facsimile: 972-644-8688

**J. Randall Price, Ph.D., ABPP, FACPN, LSOTP**
*Board Certified in Forensic Psychology*
*Board Certified in Neuropsychology*

**Timothy J. Proctor, Ph.D., ABPP, LSOTP**
*Board Certified in Forensic Psychology*
*Fellowship Trained in Forensic Psychology*

## Forensic Psychological Evaluation

### Identifying Information:

| | |
|---|---|
| Defendant: | Eduardo Enrique Alfaro |
| Birth Date: | 5/14/69 |
| Age: | 45 |
| Evaluation Date: | 9/4/14 |
| Report Date: | 11/3/14 |

### Referral Information:

On 12/13/12, Mr. Alfaro was sentenced to incarceration in the Texas Department of Criminal Justice – Institutional Division (TDCJ-ID) for the following offenses: Continuous Sexual Assault of Young Child (one count), Aggravated Sexual Assault of a Child (five counts), Sexual Assault of a Child (four counts), and Indecency with a Child – Contact (two counts). Mr. Alfaro is appealing these convictions with the assistance of his attorney, Mr. Bruce Anton. Mr. Anton requested this forensic psychological evaluation to assess Mr. Alfaro's recidivism risk as well as the likelihood that he would comply with the terms of community supervision were he given that opportunity as opposed to incarceration.

### Evaluation Techniques:

The techniques utilized in the current evaluation included clinical interview, behavioral observation, mental status examination, psychological testing/related measures, and a review of records that included the Collin County Criminal District Attorney Case Report Form, the Clerk's Record for the above-referenced offenses, the entire transcript from Mr. Alfaro's trial, and the TDCJ-ID Offender Information printout.

### Evaluation Conditions & Informed Consent:

The evaluation took place at the McConnell Unit in Beeville, Texas. Mr. Alfaro speaks only Spanish, so interpreter Ezequiel Quijano assisted with the evaluation process. The conditions for the evaluation were more than adequate. Mr. Alfaro sat inside a small cell, while the interpreter and the evaluator sat just outside of the cell. Prior to beginning the

evaluation process, Mr. Alfaro was informed both verbally and in writing of the nature and purpose of the evaluation. This included that his attorney requested the evaluation to address the above-referenced referral issues and was responsible for the cost of the evaluation. He was instructed that the evaluation was for assessment purposes only and that no treatment services would be provided. He was informed of the limits of confidentiality, including that his attorney might ultimately elect to share the evaluation results with others. With respect to this, he was instructed that if requested, a written report summarizing the evaluation results would be completed within the confines of any reasonable timeframe provided. After being provided the above information, Mr. Alfaro reported that he understood, and provided his consent to undergo the evaluation.

## Relevant Background Information:

Unless otherwise indicated, the background information that follows was obtained from Mr. Alfaro during the clinical interview.

Basic Background: Mr. Alfaro was born in Costa Rica, where he lived until he moved to the United States at age 24. He denied abuse or neglect during childhood/adolescence, but indicated that this time in his life was quite difficult due to severe poverty. He also denied significant disciplinary issues while growing up.

Educational History: Mr. Alfaro graduated high school and later completed a two-year training program to become a dental technician, which involves making dental appliances and restorative devices, such as bridges or dentures, to the specifications of a dentist.

Employment History: The majority of Mr. Alfaro's employment history has been as a dental technician. After initially performing dental technician work in Costa Rica, he moved to the United States and worked as a "busboy" for one year before then serving as a dental technician for the Baylor College of Dentistry in Dallas, Texas for seven years. He then opened his own dental technician practice, which he maintained until his incarceration.

Medical/Psychiatric History: Mr. Alfaro's medical history is mostly unremarkable. At the time of this evaluation, he was near the completion of prophylactic treatment for tuberculosis (TB) following a positive screening test. This does not indicate that he has, or has ever had TB, but rather indicates exposure at some point during his life. He reported no history of mental health difficulties or treatment.

Substance Use History: Mr. Alfaro first used alcohol at age 15. He continued to drink alcohol until his incarceration. He said that this typically occurred in social situations such as parties or sporting events. He denied that he ever developed a problem with this substance. He denied any history of illegal drug use or prescription drug abuse. He also denied any history of substance-related treatment.

Relationship History: Mr. Alfaro reported six to seven live-in romantic relationships while in Costa Rica. Since moving to the United States, he has had three such relationships. The first was his first marriage, which lasted from 1995 to 2003 and resulted in three children, two daughters and a son. The second was with the mother of the victim in the cases for which he is currently incarcerated. His relationship with her began in 2003 and apparently

contributed to the end of his first marriage. It then continued throughout almost the entirety of his relationship with his second wife. Regarding this arrangement, he reported that he split time between the residences of his wife and victim's mother in addition to having a residence of his own. In 2010, he wife found out about his extramarital affair with the victim's mother and urged him to discontinue it, but he did not do so. He reported that he believes the victim and her mother accused him of these offenses that led to his current incarceration because they were angry that he discontinued his contact with them. He said that this occurred about three months prior to him being accused. He also indicated that he believes that potential immigration benefits might have motivated their accusations against him. Although he technically remains married to his second wife, they are no longer in contact.

Sexual History: Given the nature of the referral, Mr. Alfaro's sexual history was reviewed with him in detail. In brief, he said that he is exclusively heterosexual. He acknowledged sexual promiscuity including approximately 50 sexual partners and having never been faithful during a romantic relationship. He denied, however, sexually deviant interests or behaviors of any type. While he acknowledged that he viewed pornography on occasion while in the free world, he denied that ever he viewed pornographic images involving underage individuals. As was alluded to above, he also denied the offenses for which he was convicted. Regarding these offenses, the victim indicated that he sexually abused her repeatedly from ages 10 to 16 with one instance of sexual contact having occurred at age 17. In terms of the sexual acts involved, she reported that it began with him kissing her and touching her vagina, and progressed to him having her masturbate him, mutual oral sex, and him penetrating her vagina digitally. Although she indicated that he tired to insert his penis in her vagina, he never actually did so. She also reported that he viewed pornography with her while he touched her and took pornographic pictures of her.

Criminal History: Mr. Alfaro's only convictions are ones for which he is incarcerated. He was arrested for these offenses on 6/24/11, and as was noted above, sentenced to TDCJ-ID for them on 12/13/12. In terms of additional contacts with law enforcement that did not result in convictions, three instances were found in the available records. First, on or about 11/18/03, there was an allegation of sexual abuse by his biological daughter. Child Protective Services investigated this and closed the case as unfounded because there was no outcry of abuse his daughter. Next, on or about 12/2/03, law enforcement received a call from his first wife who indicated that a disturbance ensued after she came home to find that another woman (the victim's mother in the cases against Mr. Alfaro) had moved into her residence. Finally, on or about 6/14/04, Mr. Alfaro reportedly assaulted his first wife after she confronted him about the victim's mother disciplining her children. Again, none of these allegations reportedly resulted in convictions.

## Behavioral Observation & Mental Status Examination:

Mr. Alfaro was dressed in prison-issued attire. His grooming and hygiene were good. He was alert and fully oriented. His psychomotor behavior was unremarkable. His eye contact was good. He spoke in Spanish, and answered posed questions without apparent difficulty. His affect was euthymic. He denied suicidal or homicidal ideation. His thoughts processes were logical and goal-directed. His reality testing was intact with no indications

of psychosis observed. His intellectual functioning, although not formally tested, appeared average. His attention, concentration, and memory abilities appeared grossly intact. In terms of his approach to the evaluation, no indication of an attempt to present in an overly favorable light was observed. In total, the results of the evaluation were considered to accurately represent his current psychological functioning.

## Psychological Testing & Related Measures:

Personality Assessment Inventory (PAI): The PAI is an objective measure of psychological and personality functioning that provides information about the test taker's response style through validity scales and psychological/personality functioning through the clinical scales. He took the Spanish version of this test. The PAI provides general information about psychological functioning, but does not specifically assess sexual disorders or sex offense behavior. In terms of the validity scale results, as was alluded to above, no indication of an attempt to present in an overly favorable light was observed. He did endorse certain patterns or combinations of features that are somewhat unusual, but this was not to such an extent that it would invalidate the test. Turning to the clinical scale results, consistent with his self-report, those with the profile he obtained tend to have strong feelings of persecution as well as a history of negative relationships. These individuals tend to report that they believe others have wronged them, and feel resentful regarding such. They have a strong need for acceptance by others, and have difficulty dealing with instances where this does not occur. They report ongoing stressors stemming from relationship difficulties, and their level of social support with which to deal with such tends to be lower than average. Indeed, they tend to have few close relationships in their lives at present. They describe their temper as well controlled. They tend to be satisfied with themselves, and therefore, not overly focused on personal change.

Hare Psychopathy Checklist – Revised (PCL-R): The PCL-R is a standardized rating scale of psychopathy. Psychopathy is a constellation of affective, interpersonal and behavioral components, including impulsivity; irresponsibility; shallow emotions; lack of empathy, guilt, or remorse; pathological lying; manipulativeness; egocentricity and the persistent violation of social norms. The PCL-R consists of 20 items that are scored on a three-point scale by the evaluator based on interview and historical information. Total scores range from zero to 40, with scores greater than 30 typically considered indicative of psychopathy. High scores on the PCL-R have been found to correlate with general criminal recidivism violent recidivism, and to a lesser extent, sexual offense recidivism. Mr. Alfaro was rated based on available records and clinical interview. His total score on the PCL-R was "11," which places him at less than the 9th percentile when compared to incarcerated adult male offenders. This total score can be further broken down into two factors. His score of "4" on Factor 1, which deals with the affective/interpersonal features of psychopathy, places him at the 17th percentile relative to incarcerated adult male offenders. His score of "3" on Factor 2, which reflects the behavioral aspects of psychopathy, places him at the 7th percentile relative to incarcerated adult male offenders. In total, these results are not suggestive of the presence of psychopathy, which is a positive prognostic indictor with respect to his risk for general criminal offending as well as his risk for sexual offending.

Level of Service/Risk, Need, Responsivity (LS/RNR) – The LS/RNR is a research-based instrument that allows for assessment of a variety of risk factors associated with criminal

recidivism general, and can be used to identify treatment targets for individuals involved in the criminal justice system. This instrument also provides information about the level of supervision likely required to manage the individual with respect to general criminal recidivism. The LS/RNR assesses eight general risk/need factors: Criminal History, Education/Employment, Family/Marital, Leisure, Companions, Alcohol/Drug Problem, Procriminal Attitudes/Orientation (e.g., attitudes toward criminal behavior) and Antisocial Pattern. In addition, risk/need factors specific to the individual being assessed are also considered. Mr. Alfaro's total score on the LS/RNR was "7." Based on the United States norms for male offenders, this score equates to a cumulative frequency of 3.1 when compared to the inmate research sample and 21.9 when compared to community offenders (i.e., those on community supervision or parole). In other words, Mr. Alfaro's score on this measure was the same or higher than only 3.1% of the inmate population in the research sample and 21.9% of the community offender population in the research sample. When all available information is considered, Mr. Alfaro's ratings on the LS/RNR place him in the "Low" risk/need range for general recidivism/violation of supervised release.

STATIC-99R – The risk assessment instrument used in this case was the STATIC-99R. The STATIC-99R consists of 10 research-derived risk factors and produces estimates of future risk based upon the number of risk factors present for the assessed individual. The 10 risk factors included on the STATIC-99R are as follows: 1) age, 2) having never lived with a sex partner for two continuous years, 3) one or more convictions for a non-sexual violent offense at the time of the index offense, 4) one or more prior non-sexual violence convictions, 5) one or more prior sexual offenses, 6) the presence of four or more prior sentencing dates, 7) one or more non-contact sex offenses, 8) a history of one or more unrelated victims, 9) a history of one or more stranger victims, and 10) a history of one or more male victims. Mr. Alfaro received a total score of "0" on the STATIC-99R. In the normative sample that is most appropriate for comparison with Mr. Alfaro, 2.8% of those with a score of "0" sexually reoffended at five years. In total, the results of the STATIC-99R suggest a "Low" risk of sex offense recidivism.

Risk for Sexual Violence Protocol (RSVP): The RSVP is a set of professional guidelines designed to assess risk for sexual offending. It consists of 22 risk factors within the following categories: "Sexual Violence History," "Psychological Adjustment," "Mental Disorder," "Social Adjustment," and "Manageability." Finally, additional relevant information may be included under "Other Case-Specific Factors." The forensic clinician uses the presence or absence of the risk factors in the above categories to assess an individual's risk for future sexual violence. In total, the results of the RSVP suggest a "Low" risk of sex offense recidivism.

## Diagnostic Impressions:

Relevant diagnoses according to the Diagnostic and Statistical Manual of Mental Disorders – Fifth Edition (2013):

Pedophilic Disorder, Nonexclusive Type, Sexually Attracted to Females

## Summary & Conclusions:

Mr. Alfaro is a 45-year-old male who was convicted of multiple counts of sexual offending and sentenced to TDCJ-ID. He is appealing these convictions, and as part of this process, his attorney requested this forensic psychological evaluation to assess his recidivism risk as well as the likelihood that he would comply with the terms of community supervision were he given that opportunity as opposed to incarceration. His approach to this evaluation was assessed with psychological testing, the results of which revealed no indications of an attempt to present in an overly favorable light, which is commonly an issue in evaluations of this type.

Diagnostically, the only consideration is pedophilic disorder, which is diagnosed to account for sexual offending with a child who, for at least part of the time period at issue, was pre-pubescent (i.e., generally age 13 or younger). Although Mr. Alfaro denies that he engaged in these offenses, he has been convicted of them, so at present, this diagnosis is warranted. If, however, these convictions were ultimately overturned via the appeal process, then of course this diagnosis would no longer be appropriate. Pedophilic disorder is diagnosed as nonexclusive type because his sexual history is not limited to only an interest in children. Further, this condition is diagnosed sexually attracted to females because his sexual interests are limited to females. No other diagnoses appear warranted at this time.

From a sexual offense risk assessment standpoint, there are two general risk factor areas that warrant the most consideration in an evaluation of this type. These are sexual deviancy and the presence of an antisocial lifestyle. Regarding the first of these, as was alluded to in the paragraph above, the presence of sexually deviancy (i.e., pedophilic disorder) is currently considered present based on his sexual offense convictions, but should this change at some point via the appeal process, then this would of course no longer be the case. In terms of the second general risk factor area, evidence of an antisocial lifestyle, while he had three prior contacts with the legal system prior to the instant offense, none of these resulted in conviction, and therefore, this risk factor does not appear to be present. Moving to the formal assessment measures, Mr. Alfaro's score on STATIC-99R, which as noted above is a research-derived measure that assesses sexual offense recidivism risk based on the presence/absence of 10 known risk factors, fell in the "Low" range. In the normative sample that is most appropriate for comparison, 2.8% of those with Mr. Alfaro's score on this measure sexually reoffended at five years. On the RSVP, which is another measure that assesses sexual offense recidivism risk, his results also fell in the "Low" risk range. Also of note is that he scored low on a measure of psychopathy, which is a positive prognostic sign in terms of sexual offense recidivism. In total, when all available information is considered, Mr. Alfaro's level of risk for sexual offense recidivism at present appears to fall in the low range.

In terms of Mr. Alfaro's risk for criminal recidivism in general and the likelihood that he would comply with the terms of community supervision were he given that opportunity as opposed to incarceration, it is again important to note that although he has a history of some contacts with the legal system, his overall history does not suggest a significant pattern of antisocial conduct. In addition, his score on the LS/RNR placed him in "Low" Risk/Needs category when compared to community offenders, and he scored low score on

a measure of psychopathy, which, in addition to being a positive prognostic sign in terms of sexual offense recidivism, is a positive prognostic sign in terms of risk for general criminal recidivism and likelihood of complying with the terms of supervised release. When all available information is considered, his risk for criminal recidivism in general appears low, as does his risk for violating the terms of community supervision if provided the opportunity.

Please note that this evaluator reserves the right to make adjustments or changes to the above diagnoses and opinions if new information becomes available that warrants such changes.

Sincerely,

Timothy J. Proctor, Ph.D., ABPP, LSOTP
Board Certified in Forensic Psychology #6382
Licensed Psychologist #32021
Licensed Sex Offender Treatment Provider #99180